UNITED STATES DISCTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GILBERT SANCHEZ | § § | |
| VS. | § § | CIVIL ACTION NO.: 4:19-CV-00110 |
| ENTERPRISE OFFSHORE DRILLING LLC AND SMART FABRICATORS OF TEXAS, LLC | § § § § | |

**DEFENDANT SMART FABRICATORS OF TEXAS, LLC'S
MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND**

M. Matt Jett
Evan T. Caffrey
HALL MAINES LUGRIN, P.C.
2800 Post Oak Blvd., Suite 6400
Houston, TX 77056
Telephone: 713.871.9000
Facsimile: 713.871.8962
mjett@hallmaineslugrin.com
ecaffrey@hallmaineslugrin.com
**ATTORNEYS FOR DEFENDANT
SMART FABRICATORS OF TEXAS, LLC**

# CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

SUMMARY OF THE ARGUMENT ................................................................................1

NATURE AND STAGE OF THE CASE ........................................................................2

ISSUE TO BE RULED ON BY THE COURT ..............................................................3

LAW AND ARGUMENT ..................................................................................................3

    1.    The Court should examine whether Plaintiff's claim of seaman status is proper. ..............................................................................................................3

    2.    There is no reasonable basis to conclude that Plaintiff had a connection to vessels in navigation that was substantial in duration and nature ......................4

        a.    Plaintiff spent less than 20% of his time offshore on a rig under common control. ..............................................................................................................5

        b.    Sanchez was not a member of a vessel's crew. .............................................8

        c.    Plaintiff was not exposed to perils of the sea. ..............................................9

    3.    Plaintiff's dismissal of Enterprise Offshore does not deprive this Court of jurisdiction. ..........................................................................................................13

CONCLUSION AND RELIEF SOUGHT ....................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page**

*Alexander v. Express Energy Services Operating, L.P.*
    784 F.3d 1032 (5th Cir. 2015) ................................................................................. 3, 7

*Barker v. Hercules Offshore, Inc.*,
    713 F.3d 208 (5th Cir. 2013) ........................................................................................ 1

*Brennan v. Shell Offshore, Inc.*,
    612 So.2d 929 (La. App. 1993) ................................................................................... 12

*Brown v. Eurocopter S.A.*,
    38 F. Supp. 2d 515 (S.D. Tex. 1999) .......................................................................... 12

*Burchett v. Cargill*,
    48 F.3d 173 (5th Cir. 1995) ...................................................................................... 3, 4

*Burden v. Gen. Dynamics Corp.*,
    60 F.3d 213 (5th Cir. 1995) ......................................................................................... 4

*Carnegie-Mellon University v. Cohill*,
    484 U.S. 343, 108 S.Ct. 614 (1988) ........................................................................... 13

*Case v. Omega Natchiq, Inc.*,
    C.A. No. H-08-08352008, WL 2714124 (S.D. Tex. 2008) .......................................... 3

*Chandris, Inc. v. Latsis*,
    515 U.S. 347, 115 S.Ct. 2172 (1995) ....................................................... 3, 4, 5, 7, 8, 11

*Cuevas v. BAC Home Loans Servicing, L.P.*,
    648 F.3d 242 (5th Cir. 2011) ....................................................................................... 3

*Demette v. Falcon Drilling Co., Inc.*,
    280 F.3d 492 (5th Cir. 2002) ..................................................................................... 12

*Fields v. Pool Offshore, Inc.*,
    182 F.3d 353 (5th Cir. 1999) ................................................................................... 3, 4

*Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*,
    589 F.3d 778 (5th Cir. 2009) ..................................................................................... 12

*Harbor Tug and Barge Co. v. Papai*,
    520 U.S. 548, 117 S.Ct. 1535 (1997) ..................................................................... 5, 6, 8

*Hernandez v. Cent. Power & Light*,
 880 F. Supp. 494 (S.D. Tex. 1994) ................................................................................................13

*In re Endeavor Marine Inc.*,
 234 F.3d 2879 (5th Cir. 2000) ..........................................................................................................9

*In re Quality Marine Services, Inc.*,
 04-2172005 WL 1155854 (E.D. La. May 9, 2005) ......................................................................12

*Lackey v. Atl. Richfield Co.*,
 990 F.2d 202 (5th Cir. 1993) ............................................................................................................3

*Louisiana v. Am. Nat. Prop. Cas. Co.*,
 746 F.3d 633 (5th Cir. 2014) ..........................................................................................................13

*Matthiews v. Crosby Tugs, LLC*,
 C.A. No. 15-5985, 2016 WL 6821956, and 2016 WL 7183276
 (E.D. La. Nov. 18 and Dec. 9, 2016) ............................................................................................12

*McDermott Int'l, Inc. v. Wilander*,
 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991) ................................................................12

*McLaurin v. U.S.*,
 392 F.3d 774 (5th Cir. 2004) ............................................................................................................3

*Naquin v. Elevating Boats, L.L.C.*,
 744 F.3d 927 (5th Cir. 2014) ...................................................................................................11, 12

*Rodrigue v. Aetna Cas. Co.*,
 395 U.S. 352, 89 S.Ct. 1835 (1969) ...............................................................................................12

*Schultz v. Louisiana Dock Co.*,
 94 F. Supp. 2d 746 (E.D. La. 2000) ..............................................................................................10

*Stewart v. Dutra Const. Co.*,
 543 U.S. 481, 125 S.Ct. 1118 (2005) ...............................................................................................4

*United States v. Kaluza*,
 2013 WL 6490341 (E.D. La. 2013), *aff'd in part*, 780 F.3d 647 (5th Cir. 2015) ........................12

**Statutes**

43 U.S.C. § 1349(b)(1) ................................................................................................................1, 2

# SUMMARY OF THE ARGUMENT

Smart Fabricators of Texas, LLC ("SmartFab") removed this case based on federal jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA"), which provides jurisdiction because when Plaintiff Sanchez allegedly tripped and fell on the jack-up drilling rig in question, it was jacked up in South Timbalier Block 125 on the Outer Continental Shelf.[1] With its removal, SmartFab acknowledged Sanchez's allegation of Jones Act seaman status and his claim that the allegation made his case "not removable." However, SmartFab, as Sanchez's employer, denied Sanchez was a seaman, and averred that his seaman status claim was baseless in law and fact and brought only to frustrate federal jurisdiction. The Jones Act was passed to protect seamen who face the perils of the sea. Sanchez spent over 71% of his time working for SmartFab on drilling rigs that were jacked up next to a pier, in no way facing perils of the sea, and less than 20% of his time offshore on rigs under common control– and even then his work time was spent on a rig jacked up free of any perils of the sea.

Sanchez has moved to remand, claiming that he is a seaman because he "spent a majority of [his] time working on vessels and on water"; that he "spent a substantial part (much greater than 30%) of [his] total work time for Smart Fabricators working aboard a vessel or vessels"; that he "was assigned to work on Enterprise 263, and had been there for at least one week before the incident occurred" that while working on Enterprise 263 (for at least a week), he "slept on the vessel … ate on the vessel … and spent the entire 24-hour day on the vessel." Sanchez's allegations are vague and conclusory, and he conspicuously fails to allege the primary requirement for seaman status—that the drilling rigs were "in navigation" while he was aboard. Sanchez omits

---

[1] Doc. 1 at 2-3, *citing e.g.*, *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 220 (5th Cir. 2013); 43 U.S.C. § 1349(b)(1); Affidavit of Glen Whitman, Doc. 1-9.

this key detail because the drilling rigs were not in navigation—they were jacked up free of the sea and its perils—and for the vast majority (over 70%) of his time the rigs were not only jacked up, but jacked up next to a pier or dock, with no exposure to the perils of the sea, and with Sanchez returning home at the end of every day, just like the other shipyard workers employed by SmartFab.

In a further attempt to frustrate this Court's jurisdiction, Sanchez dismissed defendant Enterprise Offshore in the apparent hope that it would destroy the grounds for OCSLA jurisdiction—ignoring that the validity of removal is determined by the state of facts existing at the time of the removal and is not affected by later changes to the suit. The facts establish that Sanchez has no colorable claim to seaman status, and the Court should deny Sanchez's motion to remand and retain its federal subject-matter jurisdiction under the OCSLA.

## **NATURE AND STAGE OF THE CASE**

This is a personal injury case in which Plaintiff Sanchez purports to be a Jones Act Seaman. The alleged accident took place on a drilling rig jacked up on the Outer Continental Shelf. Defendants jointly removed under the OCSLA,[2] averring that the Jones Act claim was fraudulently asserted to defeat removal. The case is in its earliest stage, with the Initial Pretrial and Scheduling Conference set for March 15, 2019, at 2:00 p.m.

---

[2] 43 U.S.C. § 1349(b)(1).

## ISSUE TO BE RULED ON BY THE COURT

The issue is whether Sanchez's claim of grounds for remand—that he is a Jones Act seaman—lacks a reasonable basis in fact.[3] To establish seaman status, Sanchez must show (1) his duties contribute to the function of the vessel or to the accomplishment of its mission, and (2) he has a substantial connection to a vessel in both nature and duration.[4] The second prong is not met unless the worker establishes permanent assignment to a vessel or that he actually works on a vessel at least 30% of the time.[5] If the Court has subject-matter jurisdiction it has no discretion to remand and must deny the motion to remand. *Cuevas v. BAC Home Loans Servicing, L.P.*, 648 F.3d 242, 248 (5th Cir. 2011). Review of orders on removal and remand is *de novo*. *McLaurin v. U.S.*, 392 F.3d 774, 777 (5th Cir. 2004).

## LAW AND ARGUMENT

**1. The Court should examine whether Plaintiff's claim of seaman status is proper.**

Sanchez claims this case should be remanded because he sued under the Jones Act, and Jones Act claims are generally not removable. But the fact that Jones Act claims are not generally removable does not preclude examination into whether a particular claim is proper. An improperly pleaded Jones Act claim does not bar removal.[6] If a defendant can establish that the Jones Act claims are baseless and improperly pleaded to avoid federal jurisdiction, the suit is subject to removal.[7] A defendant may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal.[8] The district court may examine affidavits and

---

[3] *Case v. Omega Natchiq, Inc.*, C.A. No. H-08-08352008, WL 2714124, *1 (S.D. Tex. 2008)
[4] *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995).
[5] *Alexander v. Express Energy Services Operating, L.P.*, 784 F.3d 1032, 1035 (5th Cir. 2015).
[6] *Case*, WL 2714124, *1 (*citing Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 356 (5th Cir. 1999)).
[7] *Id., (citing Burchett v. Cargill*, 48 F.3d 173, 175-76 (5th Cir. 1995)).
[8] *Id., (citing Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993)).

3

other material, but the court's review should not amount to an evidentiary hearing.⁹ Remand should be denied if the court determines that there is no reasonable basis on which the plaintiff may establish seaman status.¹⁰

2. **There is no reasonable basis to conclude that Plaintiff had a connection to vessels in navigation that was substantial in duration and nature.**

In *Chandris, Inc. v. Latsis*,¹¹ the Supreme Court set forth a two-part analysis to determine whether an employee qualifies as a Jones Act seaman: (1) the employee's duties must contribute to the function of the vessel or the accomplishment of the vessel's mission; and (2) and the employee must have a connection to the vessel in navigation that is substantial in both duration and nature.¹² As to the requirement for a substantial connection, courts "should emphasize that the Jones Act was intended to protect sea-based maritime workers, who owe their allegiance to a vessel, and not land-based employees, who do not."¹³ Workers injured aboard vessels are eligible for seaman status only if they are "masters or members of its crew."¹⁴

In *Chandris*, the Court explained that the fundamental purpose of the substantial-connection requirement is to give full effect to the remedial scheme created by Congress in the Jones Act, and to separate the sea-based maritime employees, who are entitled to Jones Act protection, from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.¹⁵ "[T]he ultimate inquiry is whether the worker in question is a member of the

---

⁹ *Id. (citing Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995)).
¹⁰ *Id. (citing Fields*, 182 F.3d at 356 (quoting *Burchett*, 48 F.3d at 175).
¹¹ 515 U.S. 347, 115 S.Ct. 2172 (1995),
¹² 515 U.S. at 376, 115 S.Ct. at 2194.
¹³ *Id.*
¹⁴ *Stewart v. Dutra Const. Co.*, 543 U.S. 481, 495, 125 S.Ct. 1118, 1127 (2005).
¹⁵ 515 U.S. at 368; 115 S.Ct. at 2190.

vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time."[16] In the *Papai* case, the Court further explained the inquiry must concentrate on whether the employee's duties take him to sea:

> For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on **whether the employee's duties take him to sea**. This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees.[17]

Therefore, to prove his seaman claim, Sanchez must establish that he is a member of the crew contributing to the function of the vessel and that he works at least 30% of the time on a vessel in navigation. He cannot do so because he spent less than 20% of his time offshore, and even then, the vast majority of that time was spent with the rig jacked up out of the sea.

a. **Plaintiff spent less than 20% of his time offshore on a rig under common control.**

Plaintiff's work as a welder on the ENTERPRISE 263 may have contributed to its function or the accomplishment of the vessel's mission (part one of the test); however, when the total circumstances of his employment with SmartFab are considered, he cannot establish a connection to a vessel or vessels in navigation that is substantial in both duration and nature.

Sanchez worked for SmartFab sporadically. From the beginning of his employment with SmartFab on August 17, 2017, through the date of his accident on August 8, 2018 (a span of 356 days), Plaintiff only worked for SmartFab for a total of 67 days.[18] Of those 67 days, 50 were spent either working in the shop (2 days) or working on a rig that was jacked up out of the water next

---

[16] 515 U.S. at 370; 115 S.Ct. at 2191.
[17] *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 555, 117 S.Ct. 1535, 1540 (1997) (emphasis added).
[18] See Declaration of Wayne F. Boyd, attached and incorporated as Doc. 14-1 at ¶ 11.

5

to a pier (48 days).[19] For those 50 days, Plaintiff went home every night.[20] Only 17 of those 67 days were spent offshore, and even those days were spent with the rig securely jacked up out of the water, resting on the sea floor.[21]

Only 14 of the 17 offshore work days were spent on a rig under common ownership or control with the rig on which he worked for 48 days previously.[22] Even if the days actually offshore are counted as time on a vessel "in navigation" (despite being jacked up and therefore not subjected to normal perils of the sea), Plaintiff spent less than twenty-six percent (26%) of his days on a vessel in navigation, and those days were not on vessels under common control. These percentages are illustrated by the following chart:



---

[19] Court Doc. # 14-1 at ¶ 11.
[20] *See Id.*
[21] *See Id.*
[22] Court Doc. # 14-1 at ¶ 12. In reaching the 30% threshold, plaintiffs can only amalgamate time on vessels under common control. *See, e.g., Papai*, 520 U.S. at 577, 117 S.Ct. at 1541.

6

As stated above, to be a Jones Act seaman, the claimant must have a substantial connection to a vessel ***in navigation***.[23] When a vessel is withdrawn from service for significant, extensive repairs or renovation, it is no longer considered to be in navigation.[24]

Plaintiff's Affidavit in support of his Motion to Remand does not provide a reasonable basis for seaman status. He alleges he worked for SmartFab "for numerous months" but does not say how many, and this is not a fair description of working 67 days over a one-year period.[25] He alleges he spent "a majority of [his] time working on vessels and on water," and "a substantial part (much greater than 30%) of [his] total work time for Smart Fabricators working aboard a vessel," but he does not identify how much time, or on which vessels.[26] Plaintiff does not allege that he was exposed to any perils of the sea. See Doc. 9-4.[27] His only allegation about time on a vessel is that he "was assigned to work on Enterprise 263, and had been there for at least one week before the incident occurred," and that while on the Enterprise 263 ("for at least a week"), he "slept on the vessel" and "ate on the vessel."[28] Plaintiff has not presented evidence establishing 30% or more of his total work time for SmartFab was on a vessel in navigation.[29]

The only competent evidence before the Court is SmartFab's, which shows that Plaintiff spent only 20% of his employment time "at sea" (away from docks or piers) on a vessel under common control, and even that work time was spent with the rig jacked up out of the water,

---

[23] 515 U.S. at 376, 115 S.Ct. at 2194.
[24] 515 U.S. at 374, 115 S.Ct. at 2192-93.
[25] Doc. 9-4 at ¶ 2.
[26] *Id.*
[27] *Id.*
[28] Doc. 9-4 at ¶ 3.
[29] *See, e.g.*, *Alexander*, 784 F.3d at 1037 (affirming summary judgment that plaintiff failed to carry burden of establishing seaman status with evidence of at least 30% of his time working on a vessel in navigation).

7

resting firmly on the seabed. In other words, Plaintiff's duties "took him to sea" (away from a dock) on a vessel under common control for less than 20% of his employment time with SmartFab. As a matter of law, this is simply not enough per the Supreme Court's holdings in *Papai*[30] and *Chandris*.[31]

### b.  Sanchez was not a member of a vessel's crew.

As shown by the attached Declaration of SmartFab's President and Operations Manager, SmartFab does not own or operate any vessels. It does not provide crews or crewmembers to any vessels. It does not require that its employees carry any kind of Coast Guard or Merchant Marine license, document, or other type of license to work on board vessels;[32] nor does Plaintiff suggest that he has any such licenses or other qualifications to serve as a member of a vessel's crew. The entire time he worked for SmartFab, Plaintiff never worked as a member of a crew of a vessel in navigation.[33] His only work on drilling rigs was while they were securely jacked up on the sea floor, with the body of the rig out of the water and not subject to waves, tides, or other water movement.[34] His work was limited to welding and fitting, and his job duties did not include any work related to the operation or navigation of the rigs, such as line handling, steering, watch standing, engine operation, or any drilling-related function.[35] The rigs were not operating or navigating when Mr. Cruz was aboard them, but rather were undergoing extensive repairs.[36]

---

[30] 520 U.S. at 555, 117 S.Ct. at 1540 (seaman status inquiry must concentrate on whether the employee's duties take him to sea.).
[31] 515 U.S. at 371, 115 S.Ct. at 2191 (establishing a rule of thumb that a worker who spends less than about 30 percent (30%) of his time in the service of a vessel in navigation should not qualify as a Jones Act seaman).
[32] Court Doc. # 14-1 at ¶¶ 4-6.
[33] Court Doc. # 14-1 at ¶ 13.
[34] Court Doc. # 14-1 at ¶ 13.
[35] Court Doc. # 14-1 at ¶ 14.
[36] Court Doc. # 14-1 at ¶ 14.

8

Plaintiff was not purposely assigned by SmartFab to rigs under common ownership or control. Instead, he was assigned to work on whatever project SmartFab was hired to do.[37] In his Declaration, Plaintiff does not allege the vessel(s) he worked on were in navigation.

This is not just SmartFab's say so. Enterprise Offshore, the operator of the ENTERPRISE 263, for whom SmartFab was working, confirms the docked and/or jacked up status and location of the two Enterprise rigs that Plaintiff worked on while with SmartFab, and denies that Plaintiff was a member of the crews of those rigs.[38] Enterprise further confirms that the rigs in question had their own crews (which did not include Plaintiff), had no engines, and were undergoing extensive repairs when Plaintiff was upon them, and were not exposed to the perils of the sea.[39]

    c.    **Plaintiff was not exposed to perils of the sea.**

In contrast to this case, an example of facts demonstrating exposure to uniquely maritime perils is *In re Endeavor Marine Inc.*, 234 F.3d 287, 289 (5th Cir. 2000), in which the Fifth Circuit reversed a summary judgment finding against a seaman status claim, holding that the "going to sea" requirement is satisfied when the employee's connection to the vessel regularly exposes him to maritime perils.[40] The plaintiff in *Endeavor Marine* was a derrick barge crane operator who loaded and unloaded cargo vessels in the Mississippi River. His job required him to travel over water to his worksite and exposed him to the uniquely maritime dangers that arose when his barge was moored to the cargo vessels that he was assigned to load or unload.[41] He was injured

---

[37] Court Doc. # 14-1 at ¶ 15.
[38] *See* Declaration of Glen Whitman, attached and incorporated as Doc. No. 14-2 at ¶¶ 5-10, and Declaration of Hugo Gesch, attached and incorporated as Doc. No. 14-3 at ¶¶ 5-10.
[39] *See* Doc. No. 14-2 at ¶¶ 7-11 and Doc. No. 14-3 at ¶¶ 7-11.
[40] 234 F.3d at 291.
[41] *Id.* at 289.

9

when struck by a mooring cable while waiting for his barge to be positioned alongside the cargo vessel.[42] The crane operator was engaged in classic maritime duties when he was injured by a classic peril of the sea – a broken mooring line. By contrast, Sanchez was hurt himself by tripping over a pipe—a distinctly nonmaritime endeavor. A case with very similar facts is *Schultz v. Louisiana Dock Co.*, 94 F. Supp. 2d 746 (E.D. La. 2000). The plaintiff in that case, like Plaintiff here, was a welder/fitter who worked on repairing vessels. He slept at home and drove to work each day. He did not eat or sleep on any of the barges he worked on. He never traveled or participated in any voyages with any of the barges he worked on, and he never acted as a deckhand on any of the vessels.

Looking at the aggregate circumstances of Schultz's work, the court determined that his duties were limited to inspecting and repairing barges moored at the facility. Like Sanchez, he had no work of a seagoing nature on any vessels used to transport him around the facility. Like Sanchez, Schultz worked on random vessels, owned by random entities, for random periods of time. His assignment to any vessel was random and impermanent. He owed no allegiance to any vessel. He did not qualify as a seaman:

> Regardless of whether plaintiff spent one percent or 100 percent of his time performing repair work on barges brought to the facility for repair, working from vessels or being transported around the facility by vessels, the aggregation of circumstances speaking to the nature of his work and his connection to any identifiable vessel(s) demonstrate that, as a matter of law, he is not a seaman. None of plaintiff's work was of a seagoing nature. [43]

All of these factors are true with respect to Sanchez. He worked on random vessels owned by different entities. His assignment to those vessels was random and impermanent. He was not

---

[42] *Id.*
[43] 94 F. Supp. 2d at 750.

a crew member but a passenger of any vessels he is transported on to get to his work. He went home at the end of over 70% of the days he worked for SmartFab. The injury was not caused by a maritime appurtenance or apparatus and could just have easily occurred on a land-based drilling rig. The aggregate of Sanchez's work is simply not maritime and he does not qualify as a seaman.

Some cases have recognized seaman status for workers on vessels that are not in navigation, but those cases do not apply here. *See, e.g.*, *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 930 (5th Cir. 2014) (plaintiff who spent 70% of his time aboard lift-boats while they were moored, jacked up, or docked in employer's shipyard canal still "remain[ed] exposed to the perils of a maritime work environment" sufficient to sustain jury verdict of liability under Jones Act). Even that holding has been questioned. In her dissent from the majority in *Naquin*, Judge Jones pointed out that the majority holding was "irreconcilable with *Chandris*'s basic point, which is that land-based employees like Naquin are not seamen." She reasoned as follows:

> Unlike the plaintiff in *Chandris*, Naquin did not sail on a ship that was temporarily docked. He worked almost exclusively on vessels that were moored, jacked up, or docked in the shipyard undergoing repair, and found himself on a navigable vessel only on rare occasions. . . . According to the majority, these repairmen could always claim that they spent their time working on vessels 'in navigation' despite the fact they do all of their work on or tied to land, safely removed from maritime dangers. To me, this outcome defies logic and disregards the overarching purpose of the Jones Act as stated in *Chandris*."[44]

Judge Jones went on to complain that although the majority made a "categorical assertion" that near-shore workers "still remain exposed to the perils of the sea," they cited no facts showing that Naquin, who spent nearly all of his time on boats moored to a dock, faced any maritime perils in the ordinary course of his duties. She noted that the majority's generalizations about Naquin's employment ran contrary to the fact-specific inquiry that the Supreme Court has

---

[44] 744 F.3d at 942.

recommended for determining seaman status, citing *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)(holding that Jones Act status turns on the employee's "precise relation" to the vessel).[45]

*Naquin* does not apply here because the vast majority of this Plaintiff's time was spent not just moored at a dock (as Naquin), but on a rig **jacked up** at a dock. Moored vessels are exposed to perils of the sea, for example by wave wash of passing vessels.[46] A jack-up drilling rig can float but has legs that can be lowered into the seabed. Once the legs are secured in the seabed, the rig can be "jacked-up" out of the water to create a drilling platform.[47] Jacked up drilling rigs are free of perils of the sea, and are the full equivalent of fixed platforms, which are themselves considered the equivalent of land. *See, e.g., Brennan v. Shell Offshore, Inc.*, 612 So.2d 929, 933-34 (La. App. 1993)(jacked up barge is similar to fixed platform when jacked up); *Demette*, 280 F.3d at 509 (jacked up drilling rig is, when jacked up, functionally indistinguishable from a fixed drilling platform; both stand on legs resting on the bottom; and both have work decks and platforms high enough above the water to avoid currents and waves)(DeMoss, J., dissenting); *Rodrigue v. Aetna Cas. Co.*, 395 U.S. 352, 362, 89 S.Ct. 1835, 1840 (1969)(fixed platforms are treated as islands); *Brown v. Eurocopter S.A.*, 38 F. Supp. 2d 515, 517 (S.D. Tex. 1999)(fixed platform is the legal equivalent of dry land).

---

[45] 744 F.3d at 943.
[46] *See, e.g., Matthiews v. Crosby Tugs, LLC*, C.A. No. 15-5985, 2016 WL 6821956 at *1 and 2016 WL 7183276 at *2 (E.D. La. Nov. 18 and Dec. 9, 2016)(seaman on docked vessel injured by wave wash of passing vessel); *In re Quality Marine Services, Inc.*, 04-2172005 WL 1155854 at *1 E.D. La. May 9, 2005)(pleasure boaters on moored boats injured by wave wash of passing vessel).
[47] *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 495 (5th Cir. 2002), *overruled on other grounds*, *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009). *See also*, *United States v. Kaluza*, 2013 WL 6490341, at *3 (E.D. La. 2013), *aff'd in part*, 780 F.3d 647 (5th Cir. 2015) (jack-up rig's extendable legs are "jacked" down to the ocean floor for support, "allowing the work area to be raised ... above the water level").

### 3. Plaintiff's dismissal of Enterprise Offshore does not deprive this Court of jurisdiction.

Plaintiff dismissed his claim against co-defendant and vessel operator Enterprise Offshore without prejudice immediately prior to filing his Motion to Remand. His purpose for doing so is unclear, but SmartFab presumes Plaintiff intended to eliminate the original basis for jurisdiction, as it was Enterprise's rig that provided the OCS situs. But jurisdictional facts are determined at the time of removal, and post-removal events do not affect that properly established jurisdiction. *Louisiana v. Am. Nat. Prop. Cas. Co.*, 746 F.3d 633, 636 (5th Cir. 2014); *Hernandez v. Cent. Power & Light*, 880 F. Supp. 494, 496 (S.D. Tex. 1994). If federal claims are dismissed, the Court has discretion to remand to state court, but a plaintiff's attempt to manipulate the forum is a factor to consider in the exercise of that discretion. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357, 108 S.Ct. 614, 622 (1988). Sanchez's dismissal of Enterprise Offshore, whose rig provided the OCS situs, is an apparent attempt to manipulate the forum and improperly divest the Court of its subject-matter jurisdiction.

### CONCLUSION AND RELIEF SOUGHT

Plaintiff's affidavit fails to establish a reasonable basis on which he might establish seaman status, and SmartFab's evidence conclusively negates any suggestion of a substantial connection to vessels in navigation. Accordingly, SmartFab requests that this Court deny Plaintiff's Motion to Remand. SmartFab further requests all other relief to which it may be entitled at law, in admiralty, and/or in equity.

Respectfully Submitted,

*/s/ M. Matt Jett*
M. Matt Jett
Attorney in Charge
TBN: 24068684/Fed ID 1091711

2800 Post Oak Blvd., Suite 6400
Houston, TX 77056
Telephone: 713.871.9000
Facsimile: 713.871.8962
mjett@hallmaineslugrin.com

**ATTORNEYS FOR DEFENDANT SMART FABRICATORS OF TEXAS, LLC**

OF COUNSEL:

HALL MAINES LUGRIN, P.C.
Evan T. Caffrey
TBN: 03588650/Fed ID 13178
2800 Post Oak Blvd., Suite 6400
Houston, TX 77056
Telephone: 713.871.9000
Facsimile: 713.871.8962
ecaffrey@hallmaineslugrin.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2019, a true and correct copy of the above and foregoing document was served by electronic filing and service via CM/ECF on the following at the listed e-mail address:

Anthony G. Buzbee
tbuzbee@txattorneys.com
Andrew Dao
adao@txattorneys.com
Cornelia Brandfield-Harvey
cbrandfieldharvey@txattorneys.com
The Buzbee Law Firm
JPMorgan Chase Tower
600 Travis Street, Suite 7300
Houston, Texas 77002
Tel: (713) 223-5393
Fax: (713) 223-5909

*/s/ Evan T. Caffrey*
M. Matt Jett / Evan T. Caffrey