IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GILBERT SANCHEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-110 |
| | § | |
| ENTERPRISE OFFSHORE DRILLING LLC | § | |
| and SMART FABRICATORS OF TEXAS, | § | |
| LLC, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

**I.     Background**

The issue presented in this personal-injury case is federal subject-matter jurisdiction. Gilbert Sanchez, an employee of Smart Fabricators of Texas, LLC, did welding work on different drilling rigs. (Docket Entry No. 1-2 at 3). In August 2018, while working on the Enterprise 263, a jacked-up drilling rig owned and operated by Enterprise Offshore Drilling LLC, Sanchez tripped on a pipe and injured his ankle and back. (*Id.*). Sanchez sued Enterprise Offshore Drilling and Smart Fabricators in state court, asserting negligence and unseaworthiness claims and seeking medical expenses, lost wages, and exemplary damages. (*Id.*).

Enterprise Offshore Drilling and Smart Fabricators removed, arguing that this court has subject-matter jurisdiction because Sanchez's injury occurred while he was working on a drilling rig jacked up on the Outer Continental Shelf. (Docket Entry No. 1 at 3); 43 U.S.C. § 1349(b)(1); 28 U.S.C. § 1441. Sanchez dismissed his claims against Enterprise Offshore Drilling and moved

to remand, arguing that the Jones Act precluded removal. (Docket Entry Nos. 8, 9); 46 U.S.C. § 30104; 28 U.S.C. § 1445(a).

Based on a careful review of the pleadings, the motion and response, the record, and the governing law, the court finds that Sanchez was not a seaman under the Jones Act and denies the motion to remand. (Docket Entry No. 9). The reasons are set out in detail below.

## II. The Legal Standard

"A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 722 (5th Cir. 2002); 28 U.S.C. § 1441. "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Id.*; *see Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F. 3d 362, 365 (5th Cir. 1995) (citation omitted). Removal statutes are construed strictly in favor of remand. *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

Generally, when a plaintiff sues under the Jones Act, 46 U.S.C. § 30104, the defendant cannot remove. *Holmes v. Atl. Sounding Co.*, 437 F.3d 441, 445 (5th Cir. 2006). Although the Jones Act incorporates provisions of the Federal Employers Liability Act that bar removal, 28 U.S.C. § 1445(a), an improperly pleaded Jones Act claim does not prevent removal. *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175–76 (5th Cir. 1995). The court may deny remand if, after "resolving all disputed facts and ambiguities in current substantive law in the plaintiff's favor," there is no "reasonable possibility of establishing a Jones Act claim on the merits." *Mendez v. Anadarko Petroleum Corp.*, 466 F. App'x 316, 318 (5th Cir. 2012) (per curiam) (quoting *Holmes*, 437 F.3d

at 445); *Zertuche v. Great Lakes Dredge & Docket Co., LLC*, 306 F. App'x 93, 94–95 (5th Cir. 2009) (per curiam).

"[J]urisdictional facts are determined at the time of removal." *Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 635 (5th Cir. 2014). "In most cases, to determine whether the plaintiff has any possibility of recovery against the . . . defendant, the court should conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim" against the defendant. *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (quotations omitted). If "a plaintiff can survive a Rule 12(b)(6) challenge, the Jones Act claim is not improper." *Id*. But "if the plaintiff's complaint has misstated or omitted discrete facts that would determine the propriety of joinder, the court may instead pierce the pleadings and conduct a [summary-judgment-type] inquiry," to allow the court "to identify the presence of discrete and undisputed facts that would preclude the plaintiff's recovery." *Id*. at 136–37. A district court has discretion to decide whether to pierce the pleadings. *Id.; see also Burchett*, 48 F.3d at 176 (a district court may "use a summary judgment-like procedure").

### III. Analysis

This case turns on whether Sanchez is a "seaman" under the Jones Act, because only seamen have a right of action under the statute. *Alexander v. Express Energy Serv. Operating, L.P.*, 784 F.3d 1032, 1033 (5th Cir. 2015) (citing *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 346 (5th Cir. 1999)). Although the Jones Act does not define "seaman," Congress has elsewhere defined it as the "master or member of a crew of any vessel." 33 U.S.C. § 902(3)(G); *Naquin v. Elevating Boats, L.L.C.*, 744 F.3d 927, 932–33 (5th Cir. 2014) (citing *Chandris v. Latsis*, 515 U.S. 347, 355–56 (1995)).

3

A two-prong test is used to determine whether an employee is a Jones Act "seaman." First, the employee's duties "must contribute to the function of the vessel or to the accomplishment of its mission"; and second, the employee "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature." *Wilcox v. Wild Well Control, Inc.*, 794 F.3d 531, 536 (5th Cir. 2015) (quoting *Chandris*, 515 U.S. at 368); *see also Sanders v. Cambrian Consultants (CC) Am., Inc.*, 132 F. Supp. 3d 853, 856 (S.D. Tex. 2015). Smart Fabricators concedes that Sanchez's "work as a welder on the Enterprise 263 may have contributed to its function," satisfying the first prong. (Docket Entry No. 14 at 9). But the parties dispute the second prong, whether Sanchez worked on a "vessel in navigation" and, if he did, whether his connection to the "vessel" was "substantial in terms of both duration and nature." *Wilcox*, 794 F.3d at 536 (quoting *Chandris*, 515 U.S. at 368).

Whether a plaintiff is a seaman depends "not on the place where the injury is inflicted . . . but on the nature of the seaman's service, his status as a member of the vessel, and his relationship . . . to the vessel and its operation in navigable waters." *Chandris*, 515 U.S. at 360 (quoting *Swanson v. Marra Bros., Inc.*, 328 U.S. 1, 4 (1946)). "The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Chandris*, 515 U.S. at 368.

Sanchez is a "seaman" if his "work regularly exposes [him] to 'the special hazards and disadvantages to which [seamen] who go down to sea in ships are subjected.'" *Id*. at 370 (quoting

4

*Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946) (Stone, C.J., dissenting)). "Land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore." *Wilcox*, 794 F.3d at 536 (citation omitted). The Fifth Circuit has generally declined to find seaman status when a plaintiff spends less than 30% of his or her time aboard vessels in navigation. *Naquin*, 744 F.3d at 934; *Barrett v. Chevron U.S.A., Inc.*, 781 F.2d 1067 (5th Cir. 1986).

Sanchez argues that the drilling rigs he worked on for Smart Fabricators are "vessels in navigation." He alleged and testified by affidavit that his work involved "construction, maintenance, and welding" critical to the drilling rigs' function. (Docket Entry No. 9-4). Sanchez also alleged and testified that he had been working for Smart Fabricators for several months before the injury and that he spent the majority of his time working on the drilling rigs, where he also slept and ate his meals. (*Id.*).

Smart Fabricators argues that of the 67 days Sanchez had worked for the company before he was injured, two days were spent in a shop on land; 48 days were on the Enterprise WFD 350, a jacked-up drilling rig next to a dockside pier; and 13 days were on the Enterprise 263, a jacked-up drilling rig resting on the seafloor on the Outer Continental Shelf. (Docket Entry No. 14 at 9–10). Smart Fabricators contends that when Sanchez was working on the Enterprise WFD 350 and the Enterprise 263, they were undergoing extensive repairs and were not operating or navigating. (*Id.* at 12). Finally, according to Smart Fabricators, Sanchez spent over 70% of his time on the two Enterprise jacked-up drilling rigs doing work that did not expose him to the "perils of the sea" and did not make him a member of a vessel's crew or Jones Act seaman. (*Id.*).

5

The Enterprise 263's operator testified by affidavit that Sanchez's work was limited to welding and fitting different equipment on the jacked-up drilling rigs, and that he did not operate or navigate the rig. (*Id.* at 12).

Because Sanchez's allegations about his employment with Smart Fabricators are limited, and because both he and Smart Fabricators have submitted additional evidence on whether the Jones Act applies, the court conducts a summary-judgment-type inquiry and reviews both parties' submissions. *Flagg*, 819 F.3d at 136.

### III. Analysis

#### A. Vessel in Navigation

The parties first dispute whether the jacked-up drilling rigs on which Sanchez worked, including the Enterprise 263 and the Enterprise WFD 350, were "vessels in navigation" at all. Smart Fabricators points to some early circuit court opinions that compared jacked-up drilling rigs to fixed platforms. *See, e.g.*, *Brennan v. Shell Offshore, Inc.*, 612 So.2d 929, 933–34 (4th Cir. 1993) (a jacked-up barge is similar to a fixed platform); *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 508–10 (5th Cir. 2002) (DeMoss J., dissenting) (a jacked-up drilling rig is functionally indistinguishable from a drilling platform that sits in the water). According to Smart Fabricators, the work Sanchez performed on the two Enterprise jacked-up drilling rigs was like work performed "on land" and did not make him a Jones Act seaman. (Docket Entry No. 14 at 16 (citing *Rodrigue v. Aetna Cas. Co.*, 395 U.S. 352, 361 (1969) (fixed platforms are treated as islands); *Brown v. Eurocopter S.A.*, 38 F. Supp. 2d 515, 517 (S.D. Tex. 1999) (a fixed platform is the legal equivalent of dry land)).

6

In *Stewart v. Dutra Const. Co.*, 543 U.S. 481 (2005), the Supreme Court clarified the definitions of "vessel" under the Longshore Harbor Workers' Compensation Act and "vessel in navigation" under the Jones Act. Part of the test for determining whether a watercraft is a "vessel" is whether the craft is "used, or capable of being used" for maritime transportation. *Id*. at 496. If a watercraft is "a vessel" under § 3 of the Longshore Harbor Workers' Compensation Act, it is also a "vessel in navigation" under the Jones Act. *Id*. at 497. As the Fifth Circuit has explained:

> With respect to the requirement that a vessel be "in navigation," the [Supreme] Court clarified that the requirement was meant to show only that structures could lose their vessel status if they are withdrawn from the water for extended periods. [*Stewart*, 543 U.S. at 496]. The "in navigation" requirement does not stand apart from § 3 [of the Longshore Harbor Workers' Compensation Act] and "is relevant to whether the craft is 'used, or capable of being used' for maritime transportation."

*Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295, 300 (5th Cir. 2008) (quotation omitted); *see also Bunch v. Canton Marine Towing Co., Inc.*, 419 F.3d 868, 875 (8th Cir. 2005) (Gruender, J., concurring in part and dissenting in part) (in *Stewart*, the Supreme Court eschewed a separate "in navigation" requirement; the "in navigation" element is subsumed into the definition of "vessel").

Recent Fifth Circuit cases hold that "jack-up drilling platforms . . . are considered vessels under maritime law." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 215 (5th Cir. 2013) (a drilling rig that was in a jacked-up position during the incident was a vessel); *see also Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 498 n.18 (5th Cir. 2002) (summarizing cases finding that jacked-up rigs are vessels). The record does not show that the Enterprise drilling rigs were incapable of being used for maritime transportation.

Smart Fabricators contends that "[t]he rigs were not operating or navigating when [Sanchez] was aboard them, but rather were undergoing extensive repairs." (Docket Entry No. 14 at 12). In *Chandris*, 515 U.S. 347, the Supreme Court stated that "[t]he general rule among the Court of

7

Appeals is that vessels undergoing repairs or spending a relatively short period of time in drydock are still considered to be 'in navigation' whereas ships being transformed through 'major' overhauls or renovations are not." *Chandris*, 515 U.S. at 374. The Court suggested that a 6-month drydock repair is insufficient to take a vessel out of navigation, but a 17-month project is likely enough. *Id*. at 374–75. Smart Fabricators has not submitted evidence showing when the Enterprise 263 and the Enterprise WFD 350 were undergoing repairs; how long any repairs took; whether the repairs were a major overhaul or not; or whether the rigs had become "[in]capable of being used for maritime transportation." *Stewart*, 543 U.S. at 496; *Cabin*, 518 F.3d at 300. Smart Fabricators has not shown that the Enterprise 263 and Enterprise WFD 350 were no longer vessels in navigation due to extensive repairs.

The court considers Sanchez's work on the Enterprise 263 and the Enterprise WFD 350.

### B. Sanchez's Connection with the Vessels

Smart Fabricators has submitted evidence showing that Sanchez began working for the company on August 17, 2017, and had worked a total of 67 days when his injury occurred. (Docket Entry No. 14-1 at ¶ 11). During those 67 days, Sanchez worked two days in a shop on land; 48 days on the Enterprise WFD 350, a jacked-up drilling rig next to a pier; and 13 days on the Enterprise 263, a jacked-up drilling rig offshore. (*Id*.). Because Sanchez spent more than 30% of his time working on the Enterprise WFD 350 and the Enterprise 263, he satisfies the minimum-duration requirement. *See Alexander*, 784 F.3d at 1037; *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 377 (5th Cir. 2001).

Sanchez's connection to the vessels was not, however, substantial in nature. "For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's

8

connection to the vessel must concentrate on whether the employee's duties take him to sea." *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 555 (1997). A review of Sanchez's work and working circumstances shows that he did not have the necessary connection to the Enterprise 263 or the Enterprise WFD 350.

Sanchez did not submit evidence showing that he was assigned to either vessel as a crew member. (Docket Entry No. 14 at 12). Smart Fabricators did not own or operate any vessels. (*Id*.). Glen Whitman, the rig manager for the Enterprise 263, testified that Sanchez was not a crew member and could not operate the rig. (Docket Entry No. 14-2 at ¶ 10). The fact that Sanchez sometimes ate and slept, and did welding work, on the rigs did not make him a crew member of either rig. *Hufnagel*, 182 F. 3d at 347 (citing *Golden v. Rowan Co., Inc.*, 778 F.2d 1022, 1025 (5th Cir. 1985)).

Sanchez also fails to show that the duties he performed for Smart Fabricators on the two Enterprise jacked-up drilling rigs exposed him to the perils of the sea. This case is distinguishable from *Naquin v. Elevating Boats, LLC*, 744 F.3d 927 (5th Cir. 2014), in which the plaintiff ordinarily worked aboard liftboats while they were moored, jacked up, or docked in the defendant's shipyard canal. He spent approximately 70% of his time working aboard the liftboats, "inspecting them for repairs, cleaning them, painting them, replacing defective or damaged parts, . . . and operating the vessel's marine cranes and jack-up legs." *Id*. at 930. The district court found that the plaintiff in *Naquin* was not a seaman because he worked only on liftboats that were moored, jacked up, or docked. The Fifth Circuit reversed, holding that the plaintiff's primary duties were performing the "ship's work on vessels docked or at anchor in navigable water," and that "[i]n doing this work, [the plaintiff] faced precisely the same type and degree of maritime perils faced by" a seaman at sea. *Id*. (citing *In re Endeavor Marine Inc.*, 234 F. 3d 287, 292 (5th Cir. 2000) (a worker whose primary

9

responsibility was to operate the cranes on board a vessel to load and unload cargo had the substantial connection to the vessel needed to qualify as a seaman)).

Fabricators's witness testified that Sanchez worked on the two Enterprise drilling rigs only "while they were jacked up on the sea floor, with the body of the rig out of the water and not subject to waves, tides, or other water movement." (Docket Entry No. 14-1 at ¶ 13). Unlike the plaintiff in *Naquin*, whose job duties included operating the liftboats' marine cranes and jacked-up legs, Sanchez's duties did not include, and he was not involved in, tasks requiring operating or navigating the rigs, such as "line handling, steering, watch standing, engine operation, or any drilling-related function." (*Id.*). Sanchez was injured when he tripped on a pipe welded to the drilling-rig deck. The injury was of a type, and from a risk, that longshoremen commonly face in their work, and not from the perils a seaman faces at sea.[1]

The record evidence does not show that the circumstances or the nature of Sanchez's duties exposed him to the perils of the sea in a manner associated with seaman status. *Becker*, 335 F.3d at 391 (the plaintiff was not a seaman because his work "[did] not constitute the kind of regular or continuous commitment of his labor to the service to that vessel that regularly exposed him to the perils of the sea"); *see also In re Buchanan Marine, L.P.*, 874 F.3d 356, 367–68 (2d Cir. 2017) (distinguished from *Naquin* in that the plaintiff's work of inspecting and maintaining moored barges used to transport rock did not expose him to the perils of the sea ); *Naquin*, 744 F.3d at 934–95 (Jones J., dissenting) (an employee who spends nearly all his time on boats moored to a dock

---

[1] Smart Fabricators also argues that *Naquin* does not apply because in that case, the plaintiff worked mostly on moored vessels, while Sanchez worked on jacked-up drilling rigs. (Docket Entry No. 14 at 16). Smart Fabricators contends that jacked-up drilling rigs can float but their legs can be lowered into the seabed, which made them functionally equivalent to fixed platforms or land. The evidence is helpful to show that workers on jacked-up drilling rigs were less likely to face the perils of the sea.

generally faces no maritime perils in the ordinary course of his duties). Sanchez has not alleged facts or submitted or identified evidence showing that he had a substantial connection with a vessel in navigation as a seaman. The Jones Act does not apply, and the case was removable.

**VI.     Conclusion**

The motion to remand, (Docket Entry No. 9), is denied.

SIGNED on March 25, 2019, at Houston, Texas.

                                               Lee H. Rosenthal
                                     Chief United States District Judge